| | |
|---|---|
| **DYLAN MURRAY,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:21-cv-00033 |
| | ) |
| **CHAN'S FRAME AND BODY SHOP,** | ) |
| **LLC, et al.,** | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM OPINION

Pending before the Court is Defendants Casey Cox and Nate Lewis' Motion for Summary Judgment (Doc. No. 58) and accompanying memorandum in support (Doc. No. 59). Plaintiff responded (Doc. No. 66), and Defendants submitted a reply (Doc. No. 74). For the following reasons, the Court will grant in part and deny in part Defendants' Motion (Doc. No. 58).

**I. FACTUAL ALLEGATIONS AND BACKGROUND[1]**

In the early morning hours of July 4, 2021, Cumberland County Sheriff's Office Deputy Nate Lewis activated his sirens and began pursuing a fast-moving Honda Civic down a winding

---

[1] The facts in this section are undisputed unless specifically noted otherwise and are drawn from the undisputed portions of the parties' statements of facts (Doc. Nos. 67, 68), the exhibits, depositions, and declarations submitted in connection with the summary judgment briefing that are not contradicted by the evidence in the record. Defendants did not timely dispute Plaintiff's Response to Defendants' Statement of Undisputed Material Fact (Doc. No. 68), and, opted instead to file a Motion to Strike (Doc. No. 75) premised on Local Rule 56.01(c) allowing only for Plaintiff to offer additional disputed facts. (Doc. No. 75 at 1 (quoting L.R. 56.01(c))). In doing so, however, Defendants concede that the facts in Plaintiff's Response (Doc. No. 68) are undisputed. (See Doc. No. 75 at 1 ("Plaintiff has submitted additional statements of *undisputed facts*") (emphasis in original)). Accordingly, the Court, in its discretion, may consider them. To the extent that Defendants would have contested certain facts in Plaintiff's Response (Doc. No. 68), they forfeited any chance to do so by failing to respond with a Reply Statement as contemplated in Local Rule 56.01(d).

road.  (Doc. Nos. 67 ¶¶ 1–2; 68 ¶ 18).  The officer lost sight of the vehicle until he rounded a curve and saw that it had veered off the road, crashed through a fence, and stopped in a private field.  (Doc. Nos. 67 ¶ 3; 68 ¶ 18).  He also saw the Honda Civic's two former occupants flee from the vehicle into a nearby tree line.  (Doc. No. 67 ¶ 4).  Deputy Lewis attempted to apprehend them but failed to do so.  (Doc. No. 67 ¶ 5).  He then called dispatch to send a wrecker service to tow and impound the vehicle.  (Doc. Nos. 67 ¶ 6; 68 ¶ 20).

Deputy Lewis' request for a wrecker followed the policies set forth in the Cumberland County Sheriff's Office's Wrecker Services Standards Manual (the "Wrecker Policy" or the "Policy").  (Doc. No. 68 ¶¶ 1–3).  The Wrecker Policy was created by Cumberland County Sheriff Casey Cox pursuant to his position as the final authority and policymaker on the issue.  (Id. ¶¶ 2–3).  In relevant part, the Wrecker Policy dictates that a private wrecker company should be contacted based on its position in a rotating call list of participating wrecker companies.  (Id. ¶ 2).  That wrecker company will then tow and store the impounded vehicle.  (See Doc. No. 68-2 at 9).  The Policy also contemplates that Sheriff Cox or a deputy may place a "hold" on an impounded vehicle.[2]  (Id. ¶ 7).  Although the Wrecker Policy does not define a hold, (see generally Doc. No. 68-2), paragraphs 4 and 5 of its section titled "Storage Facilities" indicate that a hold is meant to preserve evidence.  The paragraphs state:

> (4) When a legal HOLD is placed on a vehicle by an officer, the vehicle shall be placed in an area that is not accessible to the general public in an effort to preserve evidence until such time as that evidence has been retrieved and the HOLD released on said vehicle.
>
> (5) the word HOLD will be written across the tow-in slip, the officer who placed the hold is the only person that can release the HOLD.

---

[2] Between July 31, 2020, and July 31, 2021, Cumberland County Sheriff's Office deputies placed holds on 37 impounded vehicles.  (Doc. No. 68 ¶ 9).

2

(Doc. No. 68 ¶ 5). Although not explicitly stated in any policy before the Court, the record evidence indicates that: (1) no search warrant, seizure warrant, or other court order is required for an officer to place a hold, (id. ¶ 9), (2) there is no maximum time limit for a hold on a vehicle, (id. 14), and (3) the Cumberland County Sheriff's Office does not have any administrative procedure by which the owner of a vehicle can contest an officer's hold placed on his vehicle. (Id. ¶ 13). Plainly stated, the record evidence indicates that there are no means of releasing a hold unless the officer who put it in place desires it so, and, for as long as that hold remains, the vehicle's owner is responsible for any mounting storage fees. (See id. ¶ 15; Doc. No. 68-4 at 5).

Defendant Chan's Frame & Body Shop ("CFBS") answered the early morning call to tow the impounded Honda Civic. (Doc. No. 68 ¶ 4). And, after the CFBS tow truck arrived, Deputy Lewis directed CFBS to place a hold on the vehicle pending further investigation to try to speak with anyone attempting to claim the vehicle and to ensure accurate ownership. (Doc. Nos. 67 ¶ 7; 68 ¶ 20). In the hours after the incident, Corporal Dustin Hensley completed a tow-in sheet, (Doc. No. 68 ¶ 22), and verified that the vehicle belonged to Plaintiff Dylan Murray. (Id. ¶ 23). Corporal Hensley attempted to call Murray twice, but both, times the calls went to Murray's voicemail. (Doc. No. 67 ¶ 7). The following day, July 5, 2021, Murray's attorney, Michael McGovern, called Deputy Lewis demanding the return of the vehicle to no avail.[3] (Doc. Nos. 67 ¶ 12; 68 ¶ 25). Deputy Lewis conditioned the return of the vehicle on Murray answering his questions. (Doc. Nos. 67 ¶ 12; 62 ¶¶ 5–6).

On July 12, 2021, Murray submitted to Deputy Lewis's demands; he and his attorney met the deputy outside the Sheriff's Office. (Doc. Nos. 67 ¶ 15; Doc. No. 68 ¶ 28). Murray never

---

[3] Between July 5 and July 10, 2021, Murray's family members also requested that Deputy Lewis release the hold on Murray's vehicle. (Doc. No. 68 ¶ 24).

invoked his Fifth Amendment rights and chose to answer the deputy's questions about the incident.[4] (Doc. No. 67 ¶ 16). Over the course of the interview, Deputy Lewis inquired about the circumstances of the crash but never requested proof of ownership of the Honda Civic. (Doc. No. 68 ¶ 29). After the interview concluded, Deputy Lewis informed Murray that he had released the hold on the vehicle and that Murray could retrieve it from CFBS. (Doc. Nos. 67 ¶ 18; 68 ¶ 30).

## II. LEGAL STANDARD

Summary judgment is appropriate only where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts." Rodgers v. Banks, 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the non-moving party's case. Id.

In deciding a motion for summary judgment, the Court must review all the evidence, facts, and inferences in the light most favorable to the party opposing the motion. Matsushita

---

[4] Throughout Plaintiff's Memorandum in Opposition to Defendants Cox and Lewis's Motion for Summary Judgement (Doc. No. 66), Murray contends that he asserted his Fifth Amendment rights through McGovern during the phone call between McGovern and Deputy Lewis. (See, e.g., Doc. No. 66 at 3 (claiming that Lewis retaliated against Murray because he chose to exercise his right to remain silent)). However, in his Response to Defendants' Statement of Undisputed Material Facts (Doc. No. 67), Murray "admitted for the purposes of summary judgement" that he "never invoked his Fifth Amendment rights. . . ." (Id. at 4). Accordingly, the Court must set aside any assertion contrary to this concession. This includes the contradictory statement of fact offered in Plaintiff's Additional Statement of Undisputed Material Facts (Doc. No. 68) to which Defendants did not timely respond. See L.R. 56.01(c)–(d) (allowing for the non-moving party to assert **additional disputed** facts—not contest already agreed-to, undisputed facts).

4

Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted). The Court does not, however, weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient to survive summary judgment; rather, there must be evidence on which a trier of fact could reasonably find for the non-moving party. Rodgers, 344 F.3d at 595.

Moreover, if, "after adequate time for discovery and upon motion," the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case[] and on which that party will bear the burden of proof at trial[,]" a court should enter summary judgment in favor of the moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When this occurs, "there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." Id. at 323 (citation an internal quotation marks omitted). Conclusory statements "unadorned with supporting facts are insufficient." Viet v. Le, 951 F.3d 818, 823 (6th Cir. 2020). Thus, if the nonmovant does not support the elements of a claim or defense, the moving party is entitled to judgment as a matter of law.

### III. ANALYSIS

Murray brought claims against Deputy Lewis and Sheriff Cox for violations of his constitutional rights to substantive and procedural due process pursuant to 42 U.S.C. § 1983. (Doc. No. 46 ¶¶ 27–36). While Murray asserted these claims against both Defendants in their individual capacity, he also asserted them against Sheriff Cox in his official capacity as Sheriff of Cumberland County. Different defenses are available to the defendants in their individual capacity than are available to those in their official capacity; most notably here, Defendants in

5

their individual capacity may assert qualified immunity. Benison v. Ross, 765 F.3d 649, 665 (6th Cir. 2014). Accordingly, the Court will address the individual capacity claims before turning to the claims against Sheriff Cox in his official capacity.

> A. Murray's Individual Capacity Claims Against Deputy Lee and Sheriff Cox

The Court's analysis of Murray's individual-capacity claims begin and end with the Defendants' qualified immunity defense. "Qualified immunity shields government officials in the performance of discretionary functions from standing trial for civil liability unless their actions violate clearly established rights." DiLouzio v. Vill. of Yorkville, 796 F.3d 604, 608 (6th Cir. 2015). Once the defense is raised, a plaintiff must come forward with evidence from which a jury could find "(1) that the official violated a statutory or constitutional right, and (2) [that] the right was 'clearly' established at the time of the challenged conduct." Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011). Both prongs must be met, and judges "can exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." Pearson v. Callahan, 55 U.S. 223, 236 (2009). Exercising that discretion here, the Court considers the second prong first and concludes that Murray has wholly failed to establish that the law was "clearly established" under the circumstances of this case.

Clearly established law should not be defined at a high level of generality—it must be particularized to the facts of the case. White v. Pauly, 580 U.S. 73, 79 (2017) (internal citations and quotation marks omitted). This does not require a plaintiff to identify an earlier decision that is "directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." Mullenix v. Luna, 557 U.S. 7, 12 (2015) (quoting al-Kidd, 563 U.S. at 741). "[T]his narrow definition of 'clearly established' functions to protect 'all but the plainly incompetent or those who knowingly violate the law.'" Mitchell v. Schlabach, 864 F.3d 416,

6

424 (6th Cir. 2017) (quoting Mullenix, 577 U.S. at 11). It also serves to protect "reasonable" but "mistaken" decision by officials acting in good faith. Hunter v. Bryant, 502 U.S. 224 (1991).

It is the plaintiff's burden to show "that the right was 'clearly established' at the time of the challenged conduct." al-Kidd, 563 U.S. at 735 (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). In the absence of a clear constitutional violation, the decision as to whether existing legal authority has placed the statutory or constitutional question beyond debate is determined by first looking to Supreme Court precedent, then to Sixth Circuit precedent, and then to decisions of other courts of appeal. Barber v. Miller, 809 F.3d 840, 845 (6th Cir. 2015); Flint v. Kentucky Dep't of Corr., 270 F.3d 340, 347 (6th Cir. 2001).

In his response, Murray offers a single case to carry this burden. Henry v. City of Middletown, 655 Fed. Appx. 451 (6th Cir. 2016). But the unpublished Henry is, at best, tangential to the case at hand. In Henry, the defendant maintained a custom and practice of allowing owners of impounded vehicles ten days to claim their vehicles by presenting proof of ownership and paying towing and storage fees. 655 Fed. Appx. at 452. If a vehicle's owner failed to do so in the time provided, the defendant would transfer title to itself or the towing company, thereby permanently depriving owners of their vehicles. Id. Defendants' conduct here (i.e. placing an indefinite hold on a vehicle subject to a deputy's directions) is clearly distinct. Murray had no discrete timeline by which he had to present proof of ownership and pay his fees or risk the transfer of title. This alone demonstrates that the legal holding in Henry is not particularized to this case. Also distinct from the situation in Henry, the record evidence here indicates that Deputy Lewis never required Murray to present proof of ownership. (Doc. No. 68 ¶ 29).

7

Simply put, Murray's solitary case does not place the question here beyond debate. Accordingly, Murray has not met his burden to overcome Defendants' qualified immunity, and his claims against Deputy Lewis and Sheriff Cox in their individual capacities must fail.

B. Murray's Official Capacity Claim Against Sheriff Cox

Because Plaintiff brought his § 1983 claims against Sheriff Cox in both his individual capacity and his capacity as Sheriff of Cumberland County, the Court must also address the claims against him in his official capacity. As previously stated, public officials may not assert qualified immunity as a shield in their official capacities. Benison v. Ross, 765 F.3d 649, 665 (6th Cir. 2014). Thus, when a defendant is sued in his official capacity, the lawsuit is directed against "the entity for which the officer is an agent." Pusey v. City of Youngstown, 11 F.3d 652, 657 (6th Cir. 1993).

A claim of governmental liability requires showing that the alleged misconduct is the result of a policy, statement, regulation, decision, or custom promulgated by the city, county, or its agent. Monell Dep't of Social Svcs., 436 U.S. 858, 690–91 (1978). But to hold a municipality liable, it is not enough to show that a municipal employee violated someone's rights; there is no *respondeat superior* municipal liability under § 1983. Id. at 691. Instead, plaintiffs must point to a municipal "policy or custom" and show that it was the "moving force" behind the constitutional violation. Id. at 694. Defendants' argument here is twofold. *First*, Defendants claim that Murray's constitutional rights to substantive and procedural due process were not violated. (Doc. No. 59 at 5–10). Second, Defendants assert that, even if those rights were violated, Murray cannot tie any violation to a policy or custom of the Cumberland County Sheriff's Office. (Id. at 13–15). The Court will address Defendants arguments as they relate to Murray's substantive due process claim and then turn to his procedural due process claim.

8

i. Murray's Substantive Due Process Claim

In his Second Amended Complaint, Murray sets forth a straightforward substantive due process claim, stating that "in retaliation for his assertion of [his constitutional right against self-incrimination], possession of his property (the Honda vehicle) was withheld." (Doc. No. 46 ¶ 24). However, Murray admitted for the purposes of summary judgment that he "never invoked his Fifth Amendment rights and chose to answer questions about the incident." (Doc. No. 67 ¶ 16). This defeats his substantive due process claim before it can get off the ground, and the Court need not spill more ink on the issue.

ii. Murray's Procedural Due Process Claim

Murray's procedural due process claim[5] requires more discussion. In short, Murray asserts that he had no "means to appeal the legitimacy of the Defendants' [hold]." (Doc. No. 46 ¶ 30). That he ultimately consented to Deputy Lewis's questions is immaterial to this claim of the lack of a timely post-seizure hearing or review by an impartial party that Murray challenges. (Id.). Defendants respond that, despite the lack of a hearing or impartial review, Murray's claim fails because he had the opportunity to pursue a state law tort action in lieu of bringing the instant case. (Doc. No. 59 at 5–8).

Defendants' argument fails on its face. It relies on a string of cases stemming from the Supreme Court decision in Parratt v. Taylor, 451 U.S. 527 (1981), to conclude that Murray's claim must fail because the availability of a lawsuit claiming conversion satisfies procedural due process. (Doc. No. 59 at 5–8; see also id. at 8 ("The adequate state remedy in this case was the tort claim of conversion")). Such a broadly stated conclusion merits pause. To accept

---

[5] In his Second Amended Complaint, Murray "does not contest the propriety of the initial seizure and impoundment of his vehicle." (Doc. No. 46 ¶ 29). His procedural due process claim is aimed solely at Sheriff Cox's post-deprivation processes. (Id.). Thus, the Court need not interrogate Defendants' pre-seizure arguments.

9

Defendants' position would foreclose every procedural due process claim stemming from the wrongful possession of a person's property by the state or a local government in Tennessee. It defies common sense and, as becomes apparent when reviewed with a more exacting eye, the law.

In Parratt, where a state employee negligently lost a prisoner's hobby kit and the plaintiff brought a procedural due process claim against his warden and another prison official, the Supreme Court held that the State's tort claims procedure satisfied due process even though the prisoner had suffered a deprivation of property within the meaning of the Fourteenth Amendment. 451 U.S. at 541. But just one year later, in Logan v. Zimmerman Brush Co., the Supreme Court explained that Parratt spoke only to situations involving the "tortious loss of property as a result of a random and unauthorized act by a state employee . . . not some established state procedure." 445 U.S. 442, 436 (1982) (internal citation and quotation marks omitted). In simple terms, Parratt was "not designed to reach" situations where a plaintiff has challenged the established state procedure—nor does it. Logan, 455 U.S. at 436.

This distinction between cases concerning "a random and unauthorized act by a state employee" and the "established state procedure" is explicitly carried through the Sixth Circuit's case law as well. In Copeland v. Machulis, a case on which Defendants rely heavily, the panel makes clear that:

> The 'Parratt doctrine' permits dismissal of procedural due process claims brought under 42 U.S.C. § 1983 based on that fact that the state provides the claimant an adequate post deprivation remedy if: 1) the deprivation was unpredictable or 'random'; 2) predeprivation process was impossible or impracticable; and ***3) the state actor was not authorized to take the action that deprived the plaintiff of property***. If these conditions are present, a procedural due process claim will not be stated unless the plaintiff pleads and proves that his available state remedies are inadequate to redress the wrong.

10

57 F.3d 476, 479 (6th Cir. 1995) (emphasis added). The panel then cites the fact that "nothing exist[ed] in the record to suggest that [defendants] had the delegated authority to retain the money even after [a third-party] verified that she was the source of the gift" to show that the unpredictable and unauthorized departure from prison policy, id., further demonstrating the distinction between Copeland and the case at bar.

Every other case that Defendants present to demonstrate that Murray's claims must fail as a matter of law because he could pursue a state law tort claim similarly deal with an alleged unpredictable and unauthorized action. (See Doc. No. 59 at 5–8; see also Fox v. Van Oosterum, 176 F.3d 342, 348 (6th Cir. 1999) ("The district court properly found that Fox has neither alleged nor presented any evidence that [defendants] acted pursuant to county policy or custom when they refused to return Fox's driver's license."); see also Vicory v. Walton, 721 F.2d 1062, 1064 (6th Cir. 1983) ("The Parratt Court states that there is an important difference between a challenge to an established state procedure as lacking in due process . . . and a property damage claim arising out of the alleged misconduct of state officers. In the latter case, as here, 'the state action is not necessarily complete,' because state law provides a means for the plaintiff to be made whole for the loss of property.")). If this were not enough, Defendants failed to mention Mitchell v. Fankhauser, which both postdates Copeland, Fox, and Vicory, and puts to rest any possibility that Parratt or its progeny might apply to other contexts. (See Doc. No. 59 at 5–8; see also Mitchell, 375 F.3d 477, 483–84 (6th Cir. 2004) ("We are therefore faced with deciding between multiple precedents on both sides—those that apply Parratt only to random, unauthorized deprivations of property and those that apply Parratt more broadly. Our analysis convinces us that the correct line of authority in the Sixth Circuit is that of [the former].")).

11

Accordingly, Defendants' argument has no bearing on this case. Plaintiff's claim is not that his vehicle was withheld through an unpredictable or authorized departure of policy; rather he challenges directly the alleged established policy or custom that provided him with no "means to appeal the legitimacy of the Defendants' action to enforce the 'hold'" and left the decision of whether and under what terms to return his vehicle to him at the "complete discretion and whim of Deputy Lewis." (Doc. No. 46 ¶ 31). At bottom, Defendants' argument that Murray cannot establish a constitutional harm (i.e. a violation of procedural due process) is shadowboxing; it does not approach, let alone meet, the requisite burden at summary judgment.

The second half of Defendants' Monell argument fairs no better. After reciting case law for nearly two pages, (see Doc. No. 66 at 14–15), Defendants forgo any argument that Murray failed to establish a necessary custom, policy, or practice, and instead attempt to discredit Murray's procedural due process claim in two conclusory sentences. In full, Defendants state:

> [A]ssuming *arguendo* that [Murray] could establish a necessary custom, he has still failed to connect any alleged custom to the governmental entity itself and has failed to establish the required direct causal link between the custom and the alleged deprivation. The plaintiff has not and cannot show that the individual to whom the County delegated final policy[-]making authority with regard to the issue in this case had actual or constructive knowledge of the alleged custom.

(Doc. No. 66 at 15). But none dispute that Sheriff Cox is the final policy-making authority over the Wrecker Policy, that the Wrecker Policy allows for indefinite holds to be placed on vehicles subject only to the discretion of the officer who placed the hold, or that members of the Cumberland County Sheriff's Office placed holds on vehicles at an average rate of roughly three per month in the year proceeding the hold at issue. Although in their reply, Defendants argue that "Plaintiff continues to conflate the term 'hold' with 'warrantless hold,'" (Doc. No. 74 at 3–4), Defendants have offered nothing evincing that such a distinction can—or should—be made from the Wrecker Policy or any other Cumberland County Sheriff's Office policy. Without a

12

counterbalance, which Defendants have not brought forward, the Wrecker Policy can only be read to authorize unconstitutional indefinite holds. The Court need not build Defendants a straw house just to blow it down.

Having failed to meet their initial burden at summary judgment on either <u>Monell</u> prong, Defendants are not entitled to summary judgment on Murray's procedural due process claim against Sheriff Cox in his official capacity.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. No. 58) will be granted in part and denied in part.

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE